[No. 4877.]

## The International Trust Company v. A. Leschen and Sons Rope Company et al.

1. **Corporations—Foreign Corporations—Doing Business in State —Power to Regulate.**

The legislature has power to prescribe the conditions on which foreign corporations may do business within the state, and to require a compliance therewith as a condition precedent to their invoking the jurisdiction of its courts.—P. 304.

2. **Same—Interstate Commerce.**

The legislature, in prescribing conditions on which a foreign corporation may do business within the state, may not impose any restrictions or burdens on interstate commerce.—P. 305.

3. **Same.**

A corporation of one state may send its agents to another to solicit orders for its goods, or contract for a sale thereof, without being embarrassed by state requirements as to taking out licenses, filing certificates, establishing resident agencies, and the like, since such business constitutes interstate commerce. —P. 306.

4. **Same.**

A Missouri corporation, in pursuance of a sale of its products to a Colorado corporation made by its traveling salesman, entered into a written contract in the latter state with the domestic corporation to furnish manufactured materials f. o. b. at its plant and office in St. Louis, and, in pursuance thereof, the materials were furnished. Held, that the sale and delivery of the materials did not constitute doing business within §§ 4, 10, c. 52, Sess. Laws 1901, prescribing the terms on which foreign corporations may do business within the state; and that such corporation had a right to invoke the aid of the Colorado courts in the collection of the indebtedness accruing to it by reason of such transaction.—P. 311.

5. **Same—Compliance with Requirements.**

Where a foreign corporation subsequent to the commencement of an action on a contract made with a domestic corporation, complies with §§ 4, 10, c. 52, Sess. Laws 1901, prescribing the terms on which a foreign corporation may do business within the state, and prohibiting the exercise of corporate powers, or the prosecution or the defense of actions until such requirements have been complied with, it may maintain the action and enforce the contract, since the prohibition is only provisional, and may be removed at any time.—P. 311.

*Appeal from the District Court of Dolores County.*
*Hon. James L. Russell, Judge.*

Action by The A. Leschen & Sons Rope Company against The International Trust Company and The Pro Patria Mining and Milling Company. From a judgment for plaintiff, defendant The International Trust Company, appeals.    *Affirmed.*

Messrs. MACBETH & MAY, for appellant.

Messrs. GOUDY & TWITCHELL, and Mr. JOHN M. WOY, Messrs. JONES, JONES, DAVIS & HOCKER, and Mr. L. W. ALLEN, for appellees.

A. Leschen and Sons Rope Company, appellee, and herein referred to as plaintiff, was, at the time of the transaction involved in this controversy, a corporation organized under the laws of the state of Missouri, with its plant and office in St. Louis, Mo., and was engaged in selling goods in the state of Colorado and other states of the Union. On August 17, 1901, in pursuance of a sale made by one of its traveling salesmen, it entered into a written contract at the town of Rico, Colo., with The Pro Patria Mining and Milling Company, a corporation organized under the laws of this state, to furnish certain manufactured materials and supplies f. o. b. St. Louis, Mo., to be used by the milling company in the erection and construction of a wire rope tramway which the latter company was about to build upon its property and right of way from, or near, its group of mines in Dolores county, Colorado, to a concentrating plant about to be built by the milling company at Rico, at and for the agreed price of $2,775.00, payable 50 per cent. on receipt of bill of lading, and 50 per cent. on final delivery of materials.

These materials and supplies were furnished between August 17 and December 31, 1901. On

September 1, 1901, The Pro Patria Mining and Milling Company executed a trust deed on all its property to The International Trust Company, a corporation organized under the laws of Colorado, to secure a certain bond issue. This trust deed was recorded September 18, 1901. On January 22, 1902, the plaintiff filed a lien statement under the provisions of our mechanics' lien law. On February 8, 1902, the plaintiff filed a complaint in the district court of Dolores county to recover the sum of $3,016.74, the balance due for the materials aforesaid, and for other materials subsequently ordered and furnished, averring that the materials and supplies were furnished by plaintiff and used by the milling company in the erection and construction of the tramway. The appellant, The International Trust Company, was made a party to the action because it claimed some interest in the property sought to be subjected to the mechanics' lien by virtue of the lien created by the trust deed aforesaid. Prayer for judgment for $3,016.74 against The Pro Patria Mining and Milling Company; that the same be adjudged a lien upon the property and premises described in the lien statement, prior in time and right to the lien of the trust deed; that the property and premises be sold and the proceeds applied to the payment of the same.

The defendants filed separate answers, setting up: 1st—that said plaintiff had never filed with the secretary of state a copy of its charter, or of its certificate of incorporation; 2nd—that said plaintiff had not filed with the secretary of state a certificate designating its principal place of business and an agent upon whom process might be served, and that plaintiff had not complied with the requirements of sections 4 and 10 of "An Act relating to corporations, and prescribing certain fees to be paid by corporations, foreign and domestic, and to repeal certain

acts and all acts and parts of acts in conflict therewith." Approved April 6, 1901.

These sections read as follows:

"Sec. 4. Every corporation, joint stock company or association, incorporated by or under any general or special law of any foreign state or kingdom or any state or territory of the United States, beyond the limits of this state, having a capital stock divided into shares, shall pay to the secretary of state, for the use of the state, a fee of thirty dollars in case the capital stock which said corporation, joint stock company or association is authorized to have, does not exceed fifty thousand dollars; but in case the capital stock thereof is in excess of fifty thousand dollars, the secretary of state shall collect the further sum of thirty cents on each and every thousand dollars of such excess, and a like fee of thirty cents on each thousand of the amount of each subsequent increase of stock. The said fee shall be due and payable upon the filing of the certificate of incorporation, articles of association or charter of said corporation, joint stock company or association in the office of the secretary of state, and no such corporation, joint stock company or association shall have or exercise any corporate powers or hold or acquire any real or personal property, franchises, rights or privileges, or be permitted to do any business or prosecute or defend in any suit in this state until the said fee shall have been paid."

"Sec. 10. No corporation, joint stock company or association, incorporated by or under any general or special law of this state, or by or under any general or special law of any foreign state or kingdom, or of any state or territory of the United States, beyond the limits of this state, shall exercise any corporate powers or acquire or hold any real or personal property, or any franchises, rights or privi-

leges, or do any business or prosecute or defend in any suit, in this state, until it shall have received from the secretary of this state a certificate setting forth that full payment has been made by such corporation, joint stock company or association, of all fees and taxes prescribed by law to be paid to the secretary of state, and every such corporation, joint stock company or association shall pay to the secretary of state for each such certificate, a fee of five dollars. Nothing in this section shall apply to corporations not for pecuniary profit, or corporations organized for religious, educational or benevolent purposes.''

The plaintiff filed replications to these answers, averring that its headquarters and principal place of business is in St. Louis, state of Missouri; that it had no established agency or place of business in Colorado; that it had traveling salesmen who are continuously traveling through the various states and territories of the United States; that the orders for the appurtenances and materials mentioned in the complaint were taken by one of its traveling salesmen while traveling through the state of Colorado, at the instance of the milling company, and were sold to be delivered to the milling company on board the cars at St. Louis, and were to be paid for at the city of St. Louis, in the state of Missouri; and denies that the transaction described in the complaint, out of which the action arose, constituted doing business in the state of Colorado within the meaning of the foregoing statutes.

On May 19, 1904, a supplemental and further reply to the answers was filed, setting forth that on, to wit, the 23rd day of October, A. D. 1903, the plaintiff did comply with all the requirements of the statute, and had done all things necessary to qualify and authorize the plaintiff corporation to transact busi-

ness in the state of Colorado, and to sue and defend all suits in the courts of said state.

Upon the trial it was expressly stipulated that all the facts in this supplemental reply were true. There was no controversy as to the indebtedness of the milling company to the plaintiff, and that there was $3,577.87 due from said company to the plaintiff. Appellant moved for judgment on the pleadings. The court overruled said motion, and sustained a motion of plaintiff for judgment against the milling company for the amount claimed, whereupon testimony was taken on the part of plaintiff in support of its mechanics' lien claim, and also as to the priority of such lien to the lien of the trust deed. Appellant excepted to the overruling of its motion for judgment, and also objected to the introduction of evidence in support of the mechanics' lien claim, upon the ground that plaintiff had failed to comply with the statutes of the state, and had no right to transact business in the state, or to acquire a lien upon the property, either at the time of instituting the suit, or the filing of the lien statement. A final decree was rendered in favor of plaintiff against the milling company for the amount aforesaid, and adjudging and decreeing to it a lien upon the tramway and the premises described in the complaint for the amount agreed upon, to date from September 1, 1901. To reverse this judgment, The International Trust Company brings the case here on appeal.

Mr. JUSTICE GODDARD delivered the opinion of the court:

1. The legislature has power to prescribe the terms and conditions upon which foreign corporations may do business within the state, and require a compliance with such terms and conditions as a

condition precedent to their invoking the jurisdiction of its courts.

In *Paul v. Virginia,* 8 Wall. 168, 181, Mr. Justice Field, speaking for the court, said:

"The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created.   *   *   *   The recognition of its existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose.   They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interests.   The whole matter rests in their discretion."

2.   It is also well settled that, in exercising such power, the legislature may not place any restrictions or impose any burdens upon interstate commerce. As was said in *Lyng v. State of Michigan,* 135 U. S. 161, 166:

"We have repeatedly held that no state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and

amounts to a regulation of it which belongs solely to congress.''

3.  The controlling and decisive question presented for our determination is whether the transaction out of which this controversy arises constitutes interstate commerce. That it does is abundantly shown by numerous cases, among them:— *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, 737; *Robbins v. Shelby Taxing Dist.,* 120 U. S. 489; *Caldwell v. N. Carolina,* 187 U. S. 632; *Asher v. Texas,* 128 U. S. 129; *LeLoup v. Port of Mobile,* 127 U. S. 640; *Brennan v. Titusville,* 153 U. S. 289; *Stockard v. Morgan,* 185 U. S. 27; *Mearshon & Co. v. Lumber Co.,* 187 Pa. St. 17; *Coit & Co. v. Sutton,* 102 Mich. 324, 327; *Rock Island Plow Co. v. Peterson,* 101 S. W. 616 (93 Min. 356); *Kindel v. Lithographing Co.,* 19 Colo. 310; *Miller & Co. v. Goodman,* 91 Tex. 41.

The above and many other decisions of the supreme court of the United States and of the highest state tribunals fully establish the rule that a corporation of one state may send its agents to another to solicit orders for its goods, or contract for the sale thereof, without being embarrassed or obstructed by state requirements as to taking out licenses, filing certificates, establishing resident agencies, or like troublesome or expensive conditions.

The case of *Robbins v. Shelby Taxing District* is one of the leading cases upon this subject. It was tried upon an agreed statement of facts, as follows:

''Sabine Robbins is a citizen and resident of Cincinnati, Ohio, and on the .... day of ...., 1884, was engaged in the business of drumming in the taxing district of Shelby county, Tenn.; *i. e.,* soliciting trade by the use of samples for the house or firm for which he worked as a drummer, said firm being the firm of 'Rose, Robbins & Co.', doing business in Cincinnati, and all the members of said firm being

citizens and residents of Cincinnati, Ohio. While engaged in the act of drumming for said firm, and for the claimed offense of not having taken out the required license for doing said business, the defendant, Sabine Robbins, was arrested by one of the Memphis, or taxing district, police force, and was carried before the Hon. D. P. Hadden, president of the taxing district, and fined for the offense of drumming without a license. It is admitted the firm of 'Rose, Robbins & Co.' are engaged in the selling of paper, writing materials and such articles as are used in the book stores of the taxing district of Shelby county, and that it was a line of such articles for the sale of which the said defendant herein was drumming at the time of his arrest.''

The court held upon these facts that the statute of Tennessee of 1881, enacting that ''all drummers and all persons not having a regular licensed house of business in the taxing district 'of Shelby county,' offering for sale, or selling goods, wares or merchandise therein by sample, shall be required to pay to the county trustee the sum of $10 per week, or $25 per month, for such privilege,'' was void as against Robbins.

The opinion of the court was delivered by Mr. Justice Bradley, in the course of which he said (page 494):

''In a word, it may be said, that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems. The doctrine of the freedom of that commerce, except as regulated by congress, is so firmly established that it is unnecessary to enlarge further upon the subject. In view of these fundamental principles, which are to govern our decision, we may approach the question submitted to us in the present case, and in-

quire whether it is competent for a state to levy a
tax or impose any other restriction upon the citizens
or inhabitants of other states, for selling or seeking
to sell their goods in such state before they are in-
troduced therein.  Do not such restrictions affect the
very foundation of interstate trade?  How is a man-
ufacturer, or a merchant, of one state, to sell his
goods in another state, without in some way obtain-
ing orders therefor?  Must he be compelled to send
them at a venture, without knowing whether there is
any demand for them?  This may, undoubtedly, be
safely done with regard to some products for which
there is always a market and a demand, or where the
course of trade has established a general and unlim-
ited demand.  A raiser of farm produce in New Jer-
sey or Connecticut, or a manufacturer of leather or
woodenware, may, perhaps, safely take his goods
to the city of New York and be sure of finding a
stable and reliable market for them.  But there are
hundreds, perhaps thousands, of articles which no
person would think of exporting to another state
without first procuring an order for them.  It is true,
a merchant or manufacturer in one state may erect
or hire a warehouse or store in another state, in
which to place his goods, and await the chances of
being able to sell them.  But this would require a
warehouse or store in every state with which he
might desire to trade.  Surely, he cannot be com-
pelled to take this inconvenient and expensive course.
In certain branches of business he may adopt it with
advantage.  Many manufacturers do open houses or
places of business in other states than those in which
they reside, and send their goods there to be kept
on sale.  But this is a matter of convenience, and not
of compulsion, and would neither suit the conven-
ience nor be within the ability of many others en-
gaged in the same kind of business, and would be en-

tirely unsuited to many branches of business. In these cases, then, what shall the merchant or manufacturer do who wishes to sell his goods in other states? Must he sit still in his factory or warehouse, and wait for the people of those states to come to him? This would be a silly and ruinous proceeding. The only way, and the one, perhaps, which most extensively prevails, is to obtain orders from persons residing or doing business in those other states. But how is the merchant or manufacturer to secure such orders? If he may be taxed by such states for doing so, who shall limit the tax? It may amount to prohibition. To say that such a tax is not a burden upon interstate commerce is to speak at least unadvisedly and without due attention to the truth of things.''

In *Miller & Co. v. Goodman,* it is said:

"The statute is not invalid because it violates any right of the corporation to do business in this state, but is void if so applied, because the state legislature had no power to make such provisions applicable to interstate commerce. Such legislation would be equally void, whether applied to natural persons, citizens of other states, or corporations created by such other states. It is the character of the business transacted, over which the state has no authority, which renders its action a nullity.''

In *Coit & Co. v. Sutton,* the findings of fact show that plaintiff was engaged in the business of shipping from Illinois goods manufactured in that state to its customers in Michigan on orders given by mail, or taken by its agents in Michigan. At the time of making the sale there under consideration, the plaintiff had not filed articles of association in that state, and had not paid to the secretary of state the franchise fee, as prescribed by the statute. The court had under consideration the validity of a judgment

recovered by the plaintiff corporation for lead sold in pursuance of a written contract with the defendant, which defendant refused to receive, claiming the contract to be void. It was there said:

"The law in question imposes a tax upon corporations for the privilege of doing business in Michigan. It is a tax upon the occupation of the corporation, with a provision that all its contracts shall be void until the tax is paid, which, if enforced, would embarrass plaintiff in its commerce with inhabitants of Michigan. It must, therefore, be held that the act in question does not apply to foreign corporations whose business within this state consists merely of selling through itinerant agents, and delivering commodities manufactured outside of this state."

In *Cooper Mfg. Co. v. Ferguson,* Mr. Justice Matthews used this language:

"It is quite competent, no doubt, for Colorado to prohibit a foreign corporation from acquiring a domicile in that state, and to prohibit it from carrying on within that state its business of manufacturing machinery. But it cannot prohibit it from selling in Colorado, by contracts made there, its machinery manufactured elsewhere, for that would be to regulate commerce among the states."

In *Kindel v. Lithographing Co.,* Chief Justice Hayt, speaking for this court, said:

"In this case appellee contracted to make the calendars at its place of business in Wisconsin, and deliver them to appellant in Colorado. To give the state constitution and statute the construction claimed by appellant would be to permit a state to regulate commerce among the states, authority for which is conferred exclusively upon congress.—U. S. Constitution, art. 1, § 8; see opinion of Mr. Justice Matthews in *Cooper Manufacturing Company v. Ferguson.*"

Under the ruling of these cases, which we accept as a correct interpretation of statutes like ours, it must be held that the sale and delivery of the materials and supplies mentioned in the complaint did not constitute doing business within the intendment of the sections of our statute above quoted. It, therefore, necessarily follows that, if the plaintiff was not required to comply with the terms of the statute in order to enable it to transact the business complained of, it had a right to invoke the aid of the courts in the collection of the indebtedness accruing to it by reason of such transaction.—*Wolff Dryer & Co. v. Bigler & Co.,* 192 Pa. St. 446, 471; *Spry Lumber Co. v. Chappell,* 184 Ill. 539; *Miller & Co. v. Goodman, supra.*

In the latter case it is said: "If the corporation was not required to comply with the terms of article 745, then the prohibition against maintaining a suit contained in article 746 would not apply to it, and it is unnecessary for us to discuss the question raised by counsel for appellants as to the power of the state to prohibit a corporation to sue in the courts of such state."

4.   After the commencement of the suit, and before trial, the plaintiff fully complied with all the requirements of our statutes, and established an agency and place of business in the state. If, therefore, it could be held that the transaction under consideration came within the inhibition of the statutes, said subsequent compliance would entitle plaintiff to maintain this action. The statute prohibits the prosecution or defense of an action "until the fee shall have been paid," and the prescribed certificate obtained. The prohibition is, therefore, only provisional, and may be removed at any time under the terms of the act itself.—*Caesar v. Capell,* 83 Fed. 403; *Asphalt Co. v. The Mayor,* 155 N. Y. 373; *Car-*

*son-Rana Co. v. Stern,* 129 Mo. 381; *Ryan Live-Stock & Feeding Co. v. Kelly,* 81 Pac. 470 (71 Kan. 874).

In the latter case, the supreme court of Kansas, deciding the question here presented, said:

"The plaintiff in this case is a private foreign corporation, and it was conceded upon the trial that it had not at the commencement of the action complied with the corporation laws of the state of Kansas; but it was proven that prior to the trial in this case it had complied therewith, and had received a certificate from the secretary of state evidencing that fact. The sole question presented in this case is whether the corporation, not having filed the statement and procured the certificate required by law before the commencement of the action, could comply with the law thereafter, and maintain the action. The court below decided this question in the negative, and dismissed the action. Its judgment is reversed on the authority of *State v. Book Co.,* 69 Kan. 1, and *Deere v. Wyland,* 69 Kan. 255; *Hamilton v. Reeves & Co.,* 69 Kan. 844."

We think that the purpose of the statute is fully accomplished by an actual compliance with its requirements subsequent to the commencement of the action, and renders enforceable a contract theretofore unenforceable by reason of the failure to comply therewith. For the foregoing reasons, the plaintiff was entitled to maintain this action, and the judgment and decree of the court below is therefore affirmed.                                   *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.