No. 14,268.

GUTHEIL *v.* POLICHIO.
(86 P. [2d] 972)

Decided January 16, 1939.

Messrs. HECOX & DEAHL, Messrs. ALTER & UPTON, for plaintiff in error.

Mr. HORATIO S. RAMSEY, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS action was instituted by defendant in error, plaintiff below, to set aside a conveyance of real estate by defendant, plaintiff in error here, on the ground that it was transferred for the purpose of hindering, delaying and defrauding creditors. He was successful in the trial court, and plaintiff in error seeks reversal of the judgment rendered against her, by writ of error. The Star Investment Company and Stansbury Thompson also were defendants below, but do not appear here. In case No. 13,944, in this court, *Star Investment Co. v. Polichio,* a supersedeas was granted, that action being the one in which defendant in error had recovered judgment against the company, but the writ of error therein was dismissed on motion.

At the time defendant in error brought his damage action, July 7, 1934, the company owned eighteen acres of valuable land near Aurora known as the Gutheil Park Nurseries, which was subject to a deed of trust for $5,000, and also the Greenwood Ranch upon which was a first deed of trust for $30,000. August 8, 1934, the company contracted with Thompson to convey all of the property to him in consideration of the payment of $1,000 to the company and his reconveying to it, or to someone it should designate, a tract of forty-eight acres, clear of all encumbrance. A. H. Gutheil, defendant's husband, admitted that he knew at the time of the reconveyance that the re-transfer was to be to his wife. About the same time, November 16, 1935, a deed of trust to secure $23,530 on the eighteen acre nursery for the use of the wife, subject to a $5,000 first deed of trust in favor of the Title

Guaranty Company, was recorded, and it is to set aside these two conveyances, viz., the $23,530 deed of trust and the deed of reconveyance to plaintiff in error, that this action was instituted.

The original Star Investment Company was organized in 1909; in 1918 A. H. Gutheil, above mentioned, was acting as its secretary, and he continued to so act down to the present time, being the only paid officer of the company. About 1918, according to his testimony and as evidenced by the minutes of the corporation, a loan of $22,-120 was obtained from Mrs. Gutheil, the money being a part of $50,000 which she had received from the United States government for some land purchased from her and which became part of the site for the Fitzsimons Hospital. This $22,120 was allegedly used for the purpose of acquiring new and better stock for the nursery and for improvements on the property.

The details of the entire transaction are fully set out in copies of the minutes of the corporation. According to these minutes three notes were given to Mrs. Gutheil for $15,000, $5,000 and $2,120, respectively, and signed as follows: "The Star Investment Company By: M. E. Penrose, President. Attest: A. H. Gutheil Secretary." The notes were dated May 15, 1818 (error apparent), August 15, 1918, February 15, 1919, payable on or before six years, on or before May 15, 1924, respectively. A clause in each of the notes reads as follows: "As a condition precedent to the making of this loan and the financing of this, The Star Investment Company, by the said Lilla B. Gutheil and as per resolutions of the Board of Directors on May 6th, 1918, the said Lilla B. Gutheil, or by her accredited agent, shall have the irrevocable right, to demand at any time and receive from said The Star Investment Company, security upon that Company's assets, for the payment of this note or for any unpaid balance thereon, or for any renewal of the amount that may then be due thereon."

Small amounts of interest were apparently paid from

time to time, according to the minutes, and the notes renewed until the final renewal note for $23,550 was given October 1, 1935, which, as heretofore indicated, was secured by the deed of trust recorded November 16, 1935.

The company had an authorized capital of $15,000, with only two shares of stock issued, one to Penrose, the president, and the other to Gutheil as secretary. In addition to his being secretary and as such having the care and custody of the books, Gutheil also was treasurer and manager. The president testified that although his name was signed to the notes and the minutes, he knew little about the actual operation of the company's business. For all practical purposes it was a one man corporation.

During all this time Gutheil acted as the accredited agent of his wife and it was in that capacity that he exercised "the irrevocable right, to demand * * * and receive from said The Star Investment Company, security * * * for the payment of this note."

None of the alleged indebtedness to Mrs. Gutheil was ever disclosed in any of the annual reports of the corporation filed with the secretary of state, the excuse for the omission being that the Aurora bank had asked that it be not shown, although it appears there were no dealings with that bank until about 1927. There is nothing in the record disclosing how the $50,000 was paid by the government to Mrs. Gutheil. From the record the inference would seem to be justified that she converted the entire amount into liberty bonds and turned over $22,500 in such bonds to the corporation when she allegedly received the notes. There is nothing in the record to show that any checks, drafts or cashier's checks were ever issued; neither is there any record of the transfer of any of the liberty bonds, and there is no record, other than the corporate minutes, of the $4,000 she claims to have advanced in 1929 on the Greenwood Ranch, or the $1,500 in notes she later purchased.

At the trial, when counsel for plaintiff in error was introducing his evidence, objection was made that the ex-

hibits were copies and the court remarked, "Of course, copies are not admissible, but the originals are there and are admissible * * *. Objection overruled, they will be admitted."

When the court used that language we must assume it had reference to the originals, but they are all marked paid. The original of the final renewal note given October 1, 1935, is not here, neither is it accounted for. At the close of the testimony, counsel for defendant requested that he be permitted "to substitute the duplicate of these minutes for the original," and the court remarked, "All right." No reason is given for the substitution.

In the motion for a new trial the following appears:

"In connection with these claimed errors * * * defendants offer, upon the granting of a new trial, to produce the contract between the Denver Civic and Commercial Association and the defendant, Lilla B. Gutheil, whereunder the property for the present Fitzsimons Hospital was purchased by said Association to be leased to the United States Government for the purpose of establishing said Hospital; to furnish the check paying to the defendant The Star Investment Company for its equity in the Greenwood Ranch; to furnish the notes surrendered by Lilla B. Gutheil to secure reduction of principal of indebtedness secured by first mortgage on the Greenwood Ranch in order to get extension of time before foreclosure thereon; to supply evidence as to how the money was paid to the defendant, Lilla B. Gutheil; and where it was placed after being paid to the defendant, Lilla B. Gutheil; how the payments were made by Lilla B. Gutheil to The Star Investment Company; and the fact as to the books of account and records of The Star Investment Company not being available at this time for presentation in evidence, such reason being in brief that they were destroyed, after being placed in a safe partly owned by said company, and the fact that such destruction of the

records was not known to the Company until after the death of said officer.

"Also to furnish evidence as to the reasons why there was the long delay in taking of security and of the facts as to application of the money to the Company's uses.

"Also to furnish testimony as to the reasons why the Company's officers always filed the annual reports of the company in the way they were filed, and to supply evidence that said indebtedness was reported by the present Star Investment Company, incorporated in 1931, in the first report filed after security was given for the payment of said loan, and to furnish certified copies of annual reports for the years 1929 to 1937, inclusive, or from 1918 to 1937, inclusive."

It is apparent that this offer comes too late, and no excuse is given why all this important information was not made available during the trial; nor is there any assertion or intimation that it was newly discovered evidence. The offer merely adds to the mystery of this whole picture.

We are of the opinion that the following deduction is inescapable: That A. H. Gutheil's association with The Star Investment Company was so close and exclusive that it strips the company of its corporate cloak and leaves him standing in its place, holding in one hand the "accredited agency" of his wife to do whatever he deemed best for her and himself, and in the other hand, the minute book of the corporation with the opportunity of making whatever entries were necessary to meet a given situation. In such cases the courts "will disregard the fiction of corporate entity apart from the members of the corporation when it is attempted to be used as a means of accomplishing a fraud or an illegal act." 14 C. J. 61.

The corporate entity being dissipated, the transaction becomes one of dealing between husband and wife, or even one of the husband, with the "accredited agency" of his wife, dealing with himself, which, when it

obstructs the collection of claims of creditors is presumptively fraudulent. We think the record in this case discloses that the use of the alleged funds of plaintiff in error is so "shrouded in doubt, mystery and uncertainty," as to belie their having been received. *Thuringer v. Trafton*, 58 Colo. 250, 144 Pac. 866. But assuming there was full consideration, there is no doubt that the questioned conveyances in this case were made with intent to fraudulently hinder and delay defendant in error from collecting his judgment. If it be argued that plaintiff in error did not participate in the intent, she is estopped from urging such a defense because of the investiture of her husband with the accredited agency. We think the attempted conveyances were in violation of section 17, chapter 71, '35 C. S. A., C. L. §5116.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE KNOUS and MR. JUSTICE BURKE concur.