## No. 15,957.

## DOMINION OIL COMPANY *v.* LAMB ET AL.

(201 P. [2d] 372)

Decided November 29, 1948.   Rehearing denied January 3, 1949.

Mr. WARWICK M. DOWNING, Mr. RICHARD DOWNING, for plaintiff in error.

Messrs. HUFFMAN, SUTLIFF & ROGERS, for defendant in error John J. Lamb.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

DOMINION OIL COMPANY, a Colorado corporation, to which we herein refer as plaintiff, brought action against John J. Lamb for specific performance of a written contract between the parties, or in the alternative, in case specific performance could not be had, for damages. In said contract defendant, being the owner of certain Wyoming oil land, agreed, "in consideration of the efforts to be put forth by the party of the second part [plaintiff] to restore the mineral rights of said land" to defendant, that the latter "shall make, execute, and deliver to" plaintiff "an assignment of one-half of the oil and gas content of said land."

Defendant's demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, was sustained, resulting in a judgment for dismissal, which on review here, was reversed and the cause remanded with directions. *Dominion Oil Company v. Lamb,* 112 Colo. 420, 149 P. (2d) 660. That opinion should be read in connection herewith. The answer of defendant, filed in due course, contained eleven separate defenses. The trial court found all issues in favor of plaintiff and against defendant except those raised by the second defense, wherein it is alleged that at the time said contract is said to have been executed, plaintiff was, and since has been, "defunct and inoperative," and that it "therefore had no power to enter into the contract in question."

We think it proper to observe in passing that plaintiff concedes that it was in default, as alleged, with respect to payment of annual corporation license taxes, and under the statute was defunct and inoperative at the time

of the execution and performance of the contract, but in that connection its counsel contends that it was revived by the subsequent payment of said taxes with penalties, thereby removing all questions as to the validity of the contract, and it now is asserted that it is entitled to the relief sought by its complaint.

The trial court found as to the second defense: "In our view of the statute we feel in this case plaintiff corporation, on becoming defunct, thereby became 'defunct and inoperative' and while so defunct and inoperative could not transact business; and its subsequent revival would not make valid the invalid acts done by it while so defunct and inoperative." Plaintiff in error challenges the correctness of this ruling, and the same is assigned as the only error.

Section 83, chapter 41, '35 C.S.A., provides that a corporation which fails to pay its annual corporation license taxes and other fees required by law, shall, after publication of a list of such corporations by the secretary of state and upon proof thereof being filed with such secretary, "be deemed defunct and inoperative and no longer competent to transact business within the state of Colorado. * * * Any corporation now defunct or hereafter declared defunct may become reinstated, revived and operative by the payment of the excise license tax fixed by section 93 of chapter 142 for two years, plus the penalty of one per cent of said tax for each month or fractional part of each month during which said tax may be delinquent, but in no event exceeding two years, and upon payment to the secretary of state of an additional fee of five dollars ($5.00) for a certificate of reinstatement, whereupon such defunct and inoperative corporation shall become reinstated, revived and operative."

Section 103, chapter 142, '35 C.S.A., provides: "Every corporation, which shall have failed to pay the tax provided for by this article, shall, by reason of such failure, forfeit its right to do business within the limits of the state, except as otherwise provided in this article, until

such tax is paid; and every such corporation in default for said tax after the first day of May each year, shall, in addition to said tax, pay a penalty of one per cent of said tax for every month or fractional part of every month during which said tax may be delinquent; and such corporation during its delinquency shall not be permitted to file any instruments, documents, reports or papers in the office of the secretary of state of Colorado, except its annual report, until said tax due and delinquent has been paid. And upon paying said tax, and penalty, of not exceeding two (2) years for such delinquency, such corporation shall forthwith be relieved from the forfeiture of its right to do business within this state by reason of such failure."

A proper determination of the question here presented calls for an interpretation of the above statutes in the light of the following facts and circumstances: Both contracting parties had actual or constructive knowledge at all times of plaintiff's default in the payment of corporation license taxes and of its failure to make the necessary annual reports; that plaintiff was defunct and inoperative at the time the contract was made and the services thereunder rendered by it; that as a result of plaintiff's efforts under the contract, oil royalties were paid to defendant up to March 1, 1945, in the total sum of $64,330.45, one-half of which, under the terms of the contract, should be paid to plaintiff in the event it is in a position to enforce payment; and that prior to the commencement of this action plaintiff corporation was reinstated, revived, and made operative by the payment of all taxes and penalties required by law.

The sole question presented for decision is whether or not, in the light of the foregoing, the defunct corporate status of the plaintiff constitutes a good defense in a suit by the revived corporation for specific performance of the contract.

Defendant, in effect, contends that in addition to the

legislative penalties already admittedly paid, plaintiff should further be judicially penalized in the additional sum of $32,000, no part of which should go to the state, but all thereof be turned over to defendant. We are asked to order the above sum taken from plaintiff and given to defendant, an individual, in order that plaintiff may be punished for not paying its state corporation taxes when due, instead of paying them with penalties later. We find nothing in the statutes to indicate such an intention, or to justify to such extent the enrichment of defendant, especially when the alleged incompetency of plaintiff to do business was, as above indicated, equally known to both parties at the time the contract was made and when the same was performed.

It should be remembered that corporations are creatures of the statute. It is within the province of the legislature to prescribe the rules by which they may be created, and those with which they must comply in order to continue their existence. It likewise is for the legislature to determine what penalties, if any, should be imposed for failure of corporations to comply with the laws regarding payment of license taxes, and the making of corporation reports. The legislature not only has such power to inflict penalties, but it has at all times exercised it in various ways, sometimes against the corporation itself, and at other times against the officers who manage the affairs of the corporation, making them liable in some instances for the payment of all debts of the corporation incurred during delinquency and subjecting them to fines in other instances. Under previous statutes the defaulting corporation has been barred from maintaining any court proceedings as an additional penalty for failure to pay taxes and make reports. It is obvious from an examination of previous legislative enactments that the main purpose of imposing penalties upon a corporation or its officers has been to facilitate the collection of public revenue for the support of the govern-

ment and not to collect the same in the interest of private litigants.

Section 103 of the statutes, supra, when originally enacted as section 66, chapter 2, S.L. '02, contained the provision: "Every corporation which shall have failed to pay the tax provided for in sections 64 and 65, shall, by reason of such failure, forfeit its right to do business within the limits of this State until such tax is paid, and shall be absolutely and wholly deprived of all such rights and privileges, *and the fact of such failure may be pleaded and maintained as an absolute defense to any and all actions, suits, or proceedings in law or in equity, brought or maintained by or on behalf of such corporation, in any court of competent jurisdiction within the limits of this State, until such tax is paid.*" (Italics supplied.)

The above statute was amended by chapter 211, S.L. '07, the italicized portion thereof deleted, and the "absolute defense" therein created in favor of private litigants who deal with defaulting corporations has never been restored. In place thereof section 103, supra, provides that defaulting corporations' right to do business is merely suspended "until such tax is paid," and under section 80, chapter 41, '35 C.S.A., court proceedings may be stayed "until a report be filed." No statute of Colorado makes the acts of corporations during periods of suspension for nonpayment of taxes void, or makes the transaction of business during such periods, a misdemeanor.

We have long been committed to the view that when a corporation, because of nonpayment of taxes, becomes by operation of law "defunct and inoperative," and thereafter by reason of payment of said taxes becomes "reinstated, revived and operative," the revived corporation is regarded as having had continuous existence (*Bonfils v. Hayes*, 70 Colo. 336, 201 Pac. 677; *Smith v. Mining Co.*, 82 Colo. 288, 259 Pac. 1025); that the section of the statute here under consideration "was

intended, not to effect a dissolution of a corporation coming within its terms * * *, but merely to suspend its operation while it is in default." *Bokel v. Zitnik,* 93 Colo. 565, 27 P. (2d) 753; that "the intent of the legislature was to suspend operation until payment" of the tax, and when the corporation was revived by subsequent payment with penalties, it may maintain an action for damages on account of a trespass which occurred during the period of suspension (*Smith v. Mining Co., supra*); that a defaulting corporation under the statute may either maintain or defend an action whenever the disqualification caused by nonpayment of taxes is removed by the subsequent payment of the tax with penalties. *Rollins v. Fearnley,* 45 Colo. 319, 323, 101 Pac. 345.

*Bokel v. Zitnik, supra,* was cited with approval by the circuit court of appeals in *Watts v. Liberty Royalties Corporation,* 106 F. (2d) 941, in construing a Delaware statute, which is somewhat different in terms from the one here under consideration, but, in determining the question, the court stated what is pertinent here:

"Provisions similar to those in the Delaware Law are found in the laws of many of the states and have frequently been interpreted by the courts. It has generally been held that where charter laws provide for a cancellation and forfeiture of a corporate charter and corporate powers for failure to pay fees and also provide for a reinstatement of the powers of the corporation and for restoration of its charter upon the payment of its fees, the penalty provisions providing for the forfeiture of its charter rights are largely for the purpose of collecting the charter fees and do not end the life of the corporation [citing many cases, among which is *Bokel v. Zitnik, supra*].

\* \* \*

"So long as a corporation may be reinstated by the payment of delinquent fees and have validated all of its acts that were done while its powers were suspended, the corporation is not dead. Its powers are only in sus-

pension and reinstatement of its charter restores it to all of its powers and validates all of its acts, including the acts done while its charter was suspended. * * *"

It was said in *Hazard v. Park,* 294 Fed. 40, 43, concerning the Colorado statute here involved: "* * * The evident intent of the Colorado statute is to penalize a corporation for failure to file its reports by prohibiting it from doing business in the state during the period of such failure, for the reason that the statute likewise provides that such suspension may at any time be lifted by filing such reports, paying the annual fees prescribed to accompany the same, and an additional fee of $5. Certainly, if a corporation had been dissolved, it could not be resurrected and reinstated as an entity, in such a free and easy manner."

The status of revived corporations and the validity of their corporate acts during delinquency is discussed in vol. 16, Fletcher Cyclopedia Corporations, p. 706, §7998, from which we quote: "The corporation, if revived or reinstated pursuant to statute, is the same corporation, since another corporation cannot be created by such proceedings. It becomes reinvigorated with all its old powers and franchises, and with its duties and obligations. Thereafter it may sue and be sued. Reinstatement of the corporation validates previous corporate acts, unless under the terms of the statute the delinquent corporation is, during the period of suspension, wholly without power to act or contract and its attempted acts or contracts are entirely void. * * *"

In the recent case (1945), *Joseph A. Holpuch Co. v. United States,* 58 F. Supp. 560, a similar situation was presented to that here involved. The following excerpts from the opinion in that case are pertinent here:

"We are of opinion that the decree vacating the dissolution decree was intended to put the plaintiff corporation in the same situation as it would have been in had it paid its franchise taxes when due.

* * * *

"Their subsequent payment, together with the payment of penalties for non-payment when due, removed the reason for the dissolution and put the corporation in the same situation it would have been in had the taxes been paid when due.

\* \* \*

"It would be inequitable for the state to collect taxes levied on the privilege of doing business ·as a corporation and at the same time deny to the corporation the right to exercise the privilege. So when it accepted payment of taxes in default, together with penalties, and set aside the dissolution decree, we think it intended to validate the exercise of the corporate franchise in the years for which the taxes were paid."

"Contracts entered into without the payment of license taxes are void only because the laws of the state imposing the taxes make them void, either expressly or by implication. We will not assume that the State of Illinois intended to accept taxes on the exercise of the corporate franchise and at the same time make the corporation's contracts illegal because it was not authorized to operate the franchise.

"If the effect of the decree setting aside the dissolution decree is what we havè supposed, the defendant here cannot complain; its rights were in nowise prejudiced thereby. Only the State levying the taxes is interested in the nonenforcement of contracts entered into without prior payment of them. The other contracting party is not injured thereby. If defendant has breached its contract with plaintiff, certainly it should not escape liability therefor because the corporation did not pay its taxes when due, where the State, in consideration of the payment of penalties, has forgiven the corporation therefor.

"We think it was the purpose of this decree vacating the dissolution decree to give validity to all acts done in the meantime and, hence, we conclude that plaintiff can

maintain an action for the breach of a contract entered into between the dates of the two decrees."

The above principles were applied in *International Trust Co. v. A. Leschen & Sons Rope Co.*, 41 Colo. 299, 92 Pac. 727. There defendant, a foreign corporation, entered into a contract with a Colorado corporation at a time when it was incompetent to do business in Colorado for failure to comply with the laws respecting the qualifications of foreign corporations. Subsequent to commencement of the suit on a contract, the impediment on the foreign corporation to do business was removed by its full compliance with the Colorado laws. We said: "The purpose of the statute is fully accomplished by an actual compliance with its requirements subsequent to the commencement of the action, and rendered enforceable a contract theretofore unenforceable by reason of the failure to comply therewith."

In *Gold Issue M. & M. Co. v. Pennsylvania Fire Ins. Co.*, 267 Mo. 524, 184 S. W. 999, the supreme court of Missouri cited and relied upon the last above case in construing the Colorado statute and referred to many other Colorado decisions in the opinion. After quoting from our decision in the International Trust Company case, the Missouri court said: "The statute in question, and the contract of purchase of the land mentioned, being products of the State of Colorado, and her courts holding that under that statute said contract was valid, it would be presumptuous on the part of this court to hold otherwise, especially when this court has repeatedly ruled the same way in cases arising under similar statutes of this state."

In addition to the foregoing, it has uniformly been held that one dealing with a corporation with full knowledge of all the facts as here, in reference to limitations of the corporation to do business, cannot, after accepting the benefits resulting from a contract entered into with such corporation during suspension of its franchise, deny the legality of the corporate existence or

question its competency or capacity to enter into the contract. *Kelleher v. Denver Music Co.*, 48 Colo. 212, 109 Pac. 860; *Young v. Plattner Implement Co.*, 41 Colo. 65, 91 Pac. 1109; 18 C.J.S., Corporations, p. 504, §109, et seq.

Cross specifications of error have been assigned by defendant in error Lamb relating principally to alleged errors committed by the trial court in its interpretation and construction of the written and oral contracts, and whether or not said contracts are sufficiently definite to be capable of specific performance; also with respect to the trial court's findings on the question of laches. After a careful examination of said cross specifications, we find no merit therein.

The judgment of the trial court, in finding that a contract made by a corporation during suspension of its right to do business, for nonpayment of taxes, is not enforceable after revival of the corporation upon payment of such taxes and penalties, is reversed. In all other respects it is affirmed and the cause remanded with instructions to render judgment in conformity with the views expressed herein.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE JACKSON and MR. JUSTICE STONE dissent.