Joe MICCICHE, Petitioner,

v.

David BILLINGS and the Industrial Commission of the State of Colorado, Respondents.

No. 84SC341.

Supreme Court of Colorado, En Banc.

Nov. 3, 1986.

Gunther & Westlund, P.C., Dennis H. Gunther, Terry Ehrlich, Wheat Ridge, for petitioner.

James A. May, Denver, for petitioner David Billings.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Karen Maldonado, Asst. Atty. Gen., Denver, for respondent Industrial Commission.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Billings v. Micciche*, 691 P.2d 1155 (Colo.App.1984), concerning the effect of section 7–3–104, 3 C.R.S. (1973), of the Colorado Corporation Code[1] on the personal liability of a corporate officer for corporate debts and liabilities incurred during a period when the corporation had been suspended from transacting business in Colorado as a result of its failure to file the corporate report required by section 7–10–102(1), 3 C.R.S. (1979 Supp.). The court of appeals construed section 7–3–104 to impose joint and several liability upon the petitioner, Joe Micciche, a vice president and one of three shareholders of Mountain States Welding and Sheetmetal, Inc. (Mountain States), a Colorado corporation, for work-related injuries sustained by the respondent, David Billings, in the course of his employment with Mountain States. We reverse the judgment of the court of appeals and remand the case for further proceedings.

## I.

David Billings was employed by Mountain States as a welder and sheet metal worker. On August 21, 1980, Billings sustained a fracture of both knees when a stack of sheet metal fell on him in the course of his employment. He filed a claim for workmen's compensation on October 31, 1980.

Prior to Billings' accident, the secretary of state in 1979 had suspended Mountain States from transacting business as a Colorado corporation due to its failure to file the corporate report required by section 7–10–102. For a time, however, Mountain States continued to transact business in the

---

1. All citations to the Colorado Corporation Code will be to volume 3 of the 1973 Colorado Revised Statutes and, where appropriate, to the 1979 Supplement, since the statutory law applicable to this case is contained in those sources. The present version of the Colorado Corporation Code is found in volume 3A of the Colorado Revised Statutes (1986).

state without seeking reinstatement of its corporate status under section 7–10–109(4), 3 C.R.S. (1979 Supp.).[2]

On December 4, 1980, a hearing officer of the Department of Labor entered a workmen's compensation award in favor of Billings for his medical expenses and disability benefits and also assessed statutory penalties against Mountain States for its failure to timely admit or deny liability and for its failure to carry workmen's compensation insurance. On February 10, 1981, Billings moved to reopen his claim and sought to impose liability on Joe Micciche and two other officer-shareholders of Mountain States, alleging that Mountain States did not exist as a corporation. Billings' claim against the other two officers was subsequently settled.

After several hearings, the hearing officer ruled that the suspended status of Mountain States rendered Micciche, as vice president of the corporation, personally liable for workmen's compensation benefits to Billings. The Industrial Commission reversed the ruling of the hearing officer, concluding that a suspension for failing to file a corporate report did not extinguish the corporate entity and that corporate officers, including Micciche, were not liable for corporate debts. The commission, however, remanded the case to the hearing officer for the purpose of determining whether the corporate entity should be disregarded and liability imposed on Micciche under the equitable doctrine of "piercing the corporate veil."

Both Micciche and Billings appealed the decision of the commission to the court of appeals. The court of appeals held that under section 7–3–104, 3 C.R.S. (1973), Mountain States' transaction of business while under suspension rendered Micciche,

as an officer of the suspended corporation, personally liable for the corporation's obligation to Billings. We thereafter granted Micciche's petition for certiorari to consider whether the court of appeals erred in holding that section 7–3–104 authorized the imposition of personal liability for corporate obligations on a corporate officer solely because he was an officer when the obligation was incurred. We conclude that the court of appeals erred in its construction of section 7–3–104, and we accordingly reverse the judgment and remand the case for further proceedings on the unresolved issue of whether personal liability might be appropriately imposed on Micciche by "piercing the corporate veil."

II.

Pertinent provisions of the Colorado Corporation Code and applicable case law provide the legal context for our resolution of the issue before us. Under the Colorado Corporation Code, which was originally enacted as the Colorado Corporation Act of 1958, ch. 32, sec. 1–149, 1958 Colo.Sess. Laws 119–203, corporate existence begins when the certificate of incorporation is issued. § 7–2–104, 3 C.R.S. (1973). Incorporation results in the creation of a new legal entity with an identity separate and apart from the shareholders. H. Henn & J. Alexander, *Laws of Corporations* 144–46 (3d ed. 1983). Since a validly formed corporation has an independent legal identity, the corporation itself is legally responsible for its own activities, and adverse economic consequences to the shareholders based on obligations are generally "limited to what the shareholder has invested in the corporation." *Id.* at 130.

Section 7–3–104, 3 C.R.S. (1973), which is central to this case, was originally enacted

---

**2.** In a memorandum brief submitted in support of Micciche's petition for review by the Industrial Commission, the statement is made that Mountain States was dissolved on January 1, 1983, pursuant to section 7–8–113(6), 3 C.R.S. (1979 Supp.). That statute states in relevant part:

Commencing on January 1, 1979, and continuing thereafter on January 1 of each suc-

cessive year, corporations which were suspended for the preceding three-year period under the provisions of [section] 7–10–109 shall be dissolved by operation of law without the necessity of any other action under the provisions of this section and sections 7–8–114 and 7–8–115.

as part of the Colorado Corporation Act of 1958 and provides as follows:

> All persons who assume to act as a corporation without authority to do so shall be jointly and severally liable for all debts and liabilities occurring or arising as a result thereof.

Ch. 32, sec. 140, 1958 Colo.Sess.Laws 119, 202. This statute is identical to section 139 of the 1950 Model Business Corporation Act, which was designed to impose personal liability in those situations in which persons hold themselves out and improperly act as a corporation without having made any good faith effort to achieve corporate status under state law. A 1969 revision of the Model Act renumbered section 139 as section 146. Although the statutory text was not changed in the 1969 revision, the comments were rewritten to indicate that the intention underlying section 139 was to make the issuance of a certificate of incorporation the sole determinant of corporate existence, thereby eliminating the doctrine of de facto incorporation. *See* 1 *Model Business Corp. Act Annot.* § 2.04 comment at 135–36 (3d ed. 1985). Because courts, however, continued to permit limited liability in situations where individuals reasonably but erroneously believed that they had authority to act as a corporation, *see, e.g., Cranson v. International Business Machines Corp.*, 234 Md. 477, 200 A.2d 33 (1964); *Cantor v. Sunshine Greenery, Inc.*, 165 N.J.Super. 411, 398 A.2d 571 (1979), the drafters of the Model Act amended section 146 in 1985 in order to reflect the more flexible standard expressed in case law. 1 *Model Business Corp. Act Annot.* § 2.04 comment at 130–33. The current provision, renumbered section 2.04 and entitled Liability for Preincorporation Transactions, reads: "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this Act, are jointly and severally liable for all liabilities created while so acting." The effect of the 1985 version of

section 2.04 is to impose liability only on persons who act as or on behalf of a corporation "knowing" that no corporation exists. *Id.*[3]

The Colorado Corporation Code requires a corporation to file a biennial report with the secretary of state setting forth various matters, including the character of the business in which the corporation is engaged, the names and addresses of corporate directors and officers, and a statement regarding the nature and extent of authorized and issued corporate stock. § 7–10–101, 3 C.R.S. (1973 & 1979 Supp.). If a corporation fails to file the report, the secretary of state, pursuant to section 7–10–109(1), 3 C.R.S. (1979 Supp.), must give written notice to the corporation of its failure to file, and unless the report is filed within thirty days after such notice, the corporation shall be suspended. Section 7–10–109(2), 3 C.R.S. (1979 Supp.), states:

> Any domestic corporation which is suspended ... shall be inoperative and no longer competent to transact business in this state; but the shareholders of such corporation may hold their annual or special meetings of shareholders for the election of directors, and such corporation may hold or continue to hold, encumber, sell, or convey real estate and make such reports as are required by the laws of the United States and this state and elect corporate officers. The suspension of such corporation shall not take away any remedy given against such corporation, its shareholders, or its officers for any liability incurred prior thereto.

■ A suspended corporation may be reinstated by paying a reinstatement fee of fifty dollars, filing a corporate report and paying the fee due upon such filing for the year in which the corporation is to be reinstated, paying a late penalty of twenty-five dollars for a current year's report filed after May 1, and paying a fee of seventy dollars for each year that a corporate re-

---

3. The current version of section 7–3–104 was amended in 1985 (Ch. 66, sec. 14, § 7–3–104, 1985 Colo.Sess.Laws 318) to require that liability can be imposed only on those "without good faith belief" in their authority to act. § 7–3–104, 3A C.R.S. (1986). Although the revision does not apply to this case, it does clarify the implicit meaning of the original version.

port was not filed. § 7–10–109(4), 3 C.R.S. (1979 Supp.). The effect of section 7–10–109 is not to dissolve a corporation. Rather, the obvious effect of the statute is to render a corporation incompetent to transact business while it is in default of its statutory obligations. *People v. Zimbelman,* 194 Colo. 384, 387–88, 572 P.2d 830, 833 (1977). Although several sections of the Colorado Corporation Code deal specifically with penalties imposed upon corporations, officers, and directors for various forms of conduct, §§ 7–10–111 and –112, 3 C.R.S. (1979 Supp.),[4] the statutory fees in section 7–10–109(4) are the only provisions that expressly address the matter of penalty in the case of a corporation suspended for failure to file a biennial report.

Prior to 1958, Colorado statutory law provided that officers and directors of a corporation that failed to file a corporate report were jointly and severally liable for corporate debts incurred during the delinquent period. Ch. 102, sec. 11, 1911 Colo. Sess.Laws, 257, 259. This statute was termed "penal in nature" as to the liability of a corporate officer and director but "remedial in character" as to creditors of the corporation. *Credit Men's Adjustment Co. v. Vickery,* 62 Colo. 214, 161 P. 297 (1916). A later version of the statute limited joint and several liability of corporate officers and directors to a total of one thousand dollars. Ch. 41, § 80, 1935 C.S.A. This latter section was ultimately repealed when the Colorado Corporation Act was enacted in 1958. Ch. 32, sec. 148, 1958 Colo.Sess.Laws 119, 203.

Under case law, a corporation reinstated after suspension is deemed to have had continuous existence throughout the period of suspension, with the result that the corporation's loss of authority to transact business does not affect its continued existence as a legal entity. *Zimbelman,* 194 Colo. 384, 572 P.2d 830; *Dominion Oil Co. v. Lamb,* 119 Colo. 62, 201 P.2d 372 (1948); *Smith v. Highland Mary Mining, Milling & Power Co.,* 82 Colo. 288, 259 P. 1025 (1927). Colorado case law also holds that when a suspended corporation is reinstated, corporate officers are not personally liable for debts incurred during a period of suspension. *Rocky Mountain Sales & Service, Inc. v. Havana RV, Inc.,* 635 P.2d 935 (Colo.App.1981).

### III.

▓ We conclude that section 7–3–104, 3 C.R.S. (1973), does not impose liability upon corporate officers for corporate obligations incurred while the corporation was operating under a suspended status but was still a valid legal entity. Several factors lead us to this conclusion.

Since legislative intent is the guiding principle of statutory construction, *e.g., Dawson v. Public Employees' Retirement Association,* 664 P.2d 702, 707 (Colo.1983), we look initially to the legislative object sought to be attained by section 7–3–104. That object is quite obvious from the statute's source, namely, section 139 of the 1950 Model Business Corporation Act. The purpose of that section was to impose personal liability upon those persons who take it upon themselves to act as a corporation without having undertaken any bona fide effort to achieve corporate status by complying with the statutory requirements for incorporation. 1 *Model Business Corp. Act Annot.* § 2.04 comment at 130–33. The construction of section 7–3–104 which we adopt herein is consistent with that purpose. Furthermore, such construction finds support in case law from other jurisdictions holding that no personal liability should be imposed on corporate officers for

---

**4.** Section 7–10–111, 3 C.R.S. (1979 Supp.), for example, imposes a civil penalty of twenty-five dollars upon each domestic corporation "not declared suspended that fails or refuses to file its corporate report and pay the fee prescribed therefor by May 1." Section 7–10–112, 3 C.R.S. (1979 Supp.), subjects each officer and director of a domestic corporation to a misdemeanor conviction and fine of not more than one thousand dollars for failure or refusal to answer truthfully interrogatories propounded by the secretary of state or who signs a statement or report or other document filed with the secretary of state which is known to be false in any material respect.

corporate obligations solely on the basis of the corporation's failure to comply with statutory requirements relating to franchise taxes, annual reports, and filing fees. *E.g., United States v. Standard Beauty Supply Stores, Inc,* 561 F.2d 774 (9th Cir. 1977) (failure to pay franchise tax); *Creditors Protective Association, Inc. v. Baksay,* 32 Or.App. 223, 573 P.2d 766 (1978) (failure to file annual report and to pay annual fee); *Tagliani v. Colwell,* 10 Wash. App. 227, 517 P.2d 207 (1973) (failure to pay annual license fee).

Our construction of section 7–3–104 finds further support in the circumstances under which the statute was enacted. As already noted, prior to the enactment of section 7–3–104 in 1958, Colorado statutory law imposed personal liability on the officers and directors of any corporation for corporate debts if the corporation failed to file a corporate report, ch. 102, sec. 11, 1911 Colo.Sess.Laws, 257, 259, and a later version of this statute limited liability to one thousand dollars, § 31–7–15, 1953 2 C.R.S. However, the Colorado Corporation Act of 1958, of which section 7–3–104 was an integral part, expressly repealed that statutory penalty. If the legislature intended section 7–3–104 to apply to officers of a validly formed but suspended corporation, it is reasonable to assume that it would have made its intent as clear as it had done in its prior enactments. Moreover, the legislative decision to expressly provide for reinstatement of a suspended corporation upon filing of a corporate report and the payment of statutory penalty fees, § 7–10–109(4), 3 C.R.S. (1979 Supp.), reinforces the conclusion that section 7–3–104 was simply not intended to apply to an officer of a corporation which was validly formed in the first instance but which had been subsequently suspended due to its failure to file a corporate report.[5]

Finally, we believe it appropriate to consider the consequences of a contrary construction. Given the fact that the Colorado Corporation Code permits a suspended corporation to be reinstated, with the result that corporate powers of a reinstated corporation are regarded as having continuous existence throughout the period of suspension, *e.g., Zimbelman,* 194 Colo. at 388, 572 P.2d at 833, and in light of the further fact that under Colorado case law corporate officers conducting business are not liable for debts incurred during the period of suspension, *Rocky Mountain Sales & Service Co.,* 635 P.2d at 935, it would be anomalous in the extreme to construe section 7–3–104 in a manner that exposes corporate officers to substantial legal obligations solely on the basis of the corporation's failure to seek reinstatement. We thus limit the scope of section 7–3–104 to those instances when persons act as a corporation without making any bona fide effort to achieve corporate status by complying with the statutory requirements for incorporation.

## IV.

Our determination that section 7–3–104 does not provide a per se basis for the imposition of personal liability on Micciche for Billings' workmen's compensation claim does not end this case. When the Industrial Commission reversed the hearing officer's ruling of personal liability on the part of Micciche, it returned the case to the hearing officer for the purpose of considering whether personal liability on Micciche might be imposed by piercing the corporate veil. Although the court of appeals did not address this aspect of the case, we are satisfied the commission's order of remand was appropriate.

Generally, a corporation is treated as a legal entity separate from its shareholders, thereby permitting shareholders to commit limited capital to the corporation with the assurance that they will have no personal liability for the corporation's debts. Krendl & Krendl, *Piercing the Corporate Veil: Focusing the Inquiry,* 55 Den.L.J. 1 (1978). When, however, the cor-

---

5. This conclusion is further supported by the statutory penalty scheme. Section 7–10–112, 3 C.R.S. (1979 Supp.), expressly provides for a one thousand dollar penalty for an officer or director who signs a false report, but makes no mention of a penalty for an officer or director of a corporation which fails to file an annual report. *See* note 4, *supra.*

porate structure is used so improperly that the continued recognition of the corporation as a separate legal entity would be unfair, the corporate entity may be disregarded and corporate principals held liable for the corporation's actions. *Id.* at 2. Thus, if it is shown that shareholders used the corporate entity as a mere instrumentality for the transaction of their own affairs without regard to separate and independent corporate existence, or for the purpose of defeating or evading important legislative policy, or in order to perpetrate a fraud or wrong on another, equity will permit the corporate form to be disregarded and will hold the shareholders personally responsible for the corporation's improper actions. *See Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 350, 421 P.2d 735, 739 (1966); *Gutheil v. Polichio,* 103 Colo. 426, 431, 86 P.2d 972, 974 (1939); *La Fond v. Basham,* 683 P.2d 367, 369 (Colo.App. 1984); *Krendl & Krendl, supra* at 28–43. In the absence of a fully developed factual record and adequate findings of fact, however, we cannot determine whether that equitable doctrine should be applied here. We leave it to the hearing officer to resolve this issue on remand of the case.

The judgment is reversed and the case remanded to the court of appeals with directions to return the case to the hearing officer for further proceedings consistent with the views herein expressed.

ERICKSON, J., specially concurs.

ERICKSON, Justice, specially concurring:

Mountain States Welding and Sheet Metal, Inc. (Mountain States) was suspended by the Secretary of State as a Colorado corporation on August 22, 1979, for failure to pay fees and file corporate reports. Despite the suspension, the corporation continued its operations and was doing business as a corporation on both the date that David L. Billings was employed as a welder and sheet metal worker and on the date that he was injured. The workmen's compensation insurance policy for Mountain States was cancelled on July 15, 1980, for nonpayment of insurance premium. Mountain States was uninsured on August 21, 1980, when Billings suffered serious and permanent injuries while working for Mountain States. Mountain States has not filed reports, paid fees, or taken any steps to cause the corporation to be in good standing. In my view, the record establishes that the individuals who were responsible for the operation of Mountain States were aware that the corporation had been suspended, that its workmen's compensation insurance had lapsed, and that the company was insolvent at the time that David Billings was hired. Section 7–3–104, 3 C.R.S. (1973), imposes liability for individuals who assume to act as a corporation without the authority to do so. Failure to file the required corporate reports results in the suspension of authorization to do business in Colorado, and that privilege has never been restored to Mountain States. Since Mountain States was never reinstated, it cannot claim continuing corporate vitality relating back to its initial suspension. *See Rocky Mountain Sales & Service, Inc. v. Havana RV, Inc.,* 635 P.2d 935 (Colo.App.1981).

The majority has ordered that this matter should be remanded for a hearing to determine whether the corporate veil should be pierced and individual liability imposed on Joe Micciche. In my view, the court of appeals correctly analyzed the individual statutory liability issue, but did not have the benefit of the majority's interpretation of section 7–3–104. See *Phillips & Stong Engineering Co. v. Howard B. James Associates, Inc.,* 529 P.2d 1013 (Okla.App.1974); *In re Hare,* 205 F.Supp. 881 (D.Md.1962), and *Moore v. Rommel,* 233 Ark. 989, 350 S.W.2d 190 (1961), which support the imposition of individual liability in this case.

In my view, the hearing ordered by the majority is mandated by our interpretation of section 7–3–104. The trial court and the court of appeals were both primarily concerned with the issue of whether the failure to comply with the requirements of section 7–10–101, 3 C.R.S. (1973 & 1979

Supp.) caused the corporate business entity to revert to a partnership. The issue on remand is properly focused on whether the corporate veil should be pierced and individual liability imposed on Joe Micciche. The limited liability provided by incorporation is not absolute, and individual liability may be imposed after a determination that:

> [T]he corporate fiction is being used by the corporation itself to defeat public convenience, justify wrong either to third parties dealing with the corporation or internally between stockholders, or to perpetrate fraud or other reprehensible conduct.

1 Fletcher, *Cyclopedia Corporations* § 41.30 (1983 rev. ed.).

The majority opinion properly focuses the issues to be determined on remand and, in my mind, provides a proper balance to determine the factual issues in this case. *See* Krendl & Krendl, *Piercing the Corporate Veil: Focusing the Inquiry,* 55 Denver L.J. 1 (1978).

Accordingly, I specially concur in the majority opinion.