Nos. 18,471, 18,396, 18,398.

PEOPLE OF THE STATE OF COLORADO, EX REL. DUKE W. DUNBAR, ATTORNEY GENERAL *v.* SOUTH PLATTE WATER CONSERVANCY DISTRICT, ET AL.

(364 P. [2d] 215)

Decided April 24, 1961.   Rehearing denied May 15, 1961.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THIS proceeding has its genesis in the facts fully set forth in the case of *People ex rel. Dunbar v. South Platte Water Conservancy District, et al.,* 139 Colo. 503, 343 P. (2d) 812. In that case, which was a proceeding in quo warranto, the legal effect of the court's opinion was to vacate a judgment of the district court of Weld county creating the South Platte Water Conservancy District.

In the cases which were consolidated and disposed of by the opinion above mentioned, certain taxpayers appeared and requested an order from this court to restrain the collection of taxes until the validity of the organization of the district had been finally determined. This court in December of 1957 entered an order impounding the taxes, collected by the treasurers of the several counties within which the district was located, levied for the South Platte Water Conservancy District. The order impounding these taxes was extended for a second year by order of this court dated December 18, 1958.

November 12, 1959, we ordered the county treasurers who were holding the impounded tax moneys to pay the same into the registry of this court. The Honorable Donald A. Carpenter was appointed Special Master to receive and hear all claims, other than claims for refund of taxes paid, which might be filed against the funds thus received, and after notice, to "adjudicate and determine the validity of all claims, the reasonableness, the amount and the owner thereof," and to report his adjudication and determination of all issues to the court. Approximately one hundred claims were filed and hearing thereon was set for February 16, 1960. On that date we entered a further order directing Judge Carpenter, the Special Master, to certify to the court within fifteen days the questions of law the determination of which would resolve the controversy between the claimants and the protestants who appeared in objection to the allowance of claims. Claimants and protestants who were taxpayers were given an additional fifteen days to certify further questions of law.

The Special Master certified six questions and counsel for protestants certified five more. Our resolution of the controlling interrogatory makes it unnecessary to consider any of the others since a negative answer to it would have to be given before any other inquiry would have pertinence. In succinct substance the question is:

*Was the South Platte Water Conservancy District a de facto municipal corporation from the date of the district court decree purporting to create it until the date the petition for rehearing was denied in the quo warranto proceedings, and as such de facto corporation could the district levy a valid tax?*

The answer to each phase of the question is in the affirmative. Under the provisions of the Water Conservancy Act, C.R.S. '53, 149-6-7, and the cases of *Fisher, et al. v. Pioneer Construction Company,* 62 Colo. 538, 163 Pac. 851; *Bonfils, et al. v. Hayes,* 70 Colo. 336, 201 Pac.

677; and *Enos, et al. v. District Court of the First Judicial District,* 124 Colo. 335, 238 P. (2d) 861, the South Platte Water Conservancy District was a *de facto* corporation from August 17, 1957, the date of the entry of the order of the Weld County District Court creating the district, until the denial of the petition for rehearing in this court September 14, 1959.

In *Bonfils, et al. v. Hayes,* supra, the rule as to *de facto* corporation is stated as follows:

"It is claimed that at least there was a corporation *de facto.* To constitute a corporation *de facto* there must be three elements: (1) A law under which it may lawfully be formed; (2) A *bona fide* attempt to form it according to law; (3) A user or attempt to use its corporate pow-ers. *Jones v. Aspen Hdw. Co.,* 21 Colo. 263, 269, 40 Pac. 457, 29 L.R.A. 143, 52 Am. St. Rep. 220; *Duggan v. Colo. M. & S. Co.,* 11 Colo. 113, 115, 17 Pac. 105; *Fisher v. Pioneer Co.,* 62 Colo. 538, 546, 163 Pac. 851; *Tulare Irr. Dist. v. Shepard,* 185 U.S. 1, 22 Sup. Ct. 531, 46 L. Ed. 773; *Clark v. Am. C. Coal Co.,* 165 Ind. 213, 73 N.E. 1083, 112 Am. St. Rep. 217; 14 C.J. 214, and cases there collected."

In *Enos, et al. v. District Court,* supra, this rule was applied. The incorporation of the town of Greenwood Village was challenged and its right to existence was sustained. We quoted with approval the following from *Tulate Irrigation District v. Shepard,* supra:

"From the authorities, some of which are above cited, it appears that the requisites to constitute a corporation *de facto* are three: (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise. *.* *"

All three of these elements are present in the instant case. The levy of the taxes for the years 1957 and 1958 was in the exercise of the corporate powers of the district. The proceeds of the levies now in the registry of this court should be used for refunding a portion of taxes

paid and for the payment of sums due creditors or the district as hereinafter provided. Our opinion which had the effect of terminating the corporate existence of the district was entered in an original quo warranto proceeding in this court. The judgment of the trial court was not reversed on writ of error. The ouster was effective upon the denial of the petition for rehearing in quo warranto proceedings instituted by the Attorney General.

■ By express provisions of C.R.S. '53, 149-6-7(2), a decree of the district court creating a water conservancy district may be attacked only by the Attorney General of Colorado. That section of the act clearly declares that a water conservancy district is a legal entity upon the entry of a decree by the district court having jurisdiction. The jurisdiction of the Weld County District Court was sustained in *Hill, et al v. District Court,* 134 Colo. 369, 304 P. (2d) 888.

By a report of the Colorado Water Conservation Board dated September 1, 1960, a copy of which has been filed in this proceeding, there are twenty-one water conservancy districts in Colorado. Of these, only Northern Colorado Water Conservancy District has withstood a proceeding in the nature of quo warranto, *People ex rel. Rogers v. Letford,* 102 Colo. 284, 79 P. (2d) 274. A proceeding for inclusion in San Luis Water Conservancy District was sustained in *People ex rel. Dunbar v. San Luis Water Conservancy District,* 128 Colo. 193, 261 P. (2d) 704. The legality of the creation of nineteen water conservancy districts has not been tested in any manner by the Attorney General. To hold that the decree of the Weld County District was void *ab initio* would place in jeopardy the existence of all water conservancy districts whose legality has not been challenged by the Attorney General. If a water conservancy district created by a district court, which admittedly had jurisdiction over the parties to and the subject matter of the action, could be declared void *ab initio,* then all districts would be subject to attack by any taxpayer within such district in the dis-

trict courts as well as in this court, and this would be true notwithstanding the statute which provides that only the Attorney General can proceed in quo warranto to test validity of the corporate existence, and even he must proceed within ninety days of the decree. To thus place future water developments in jeopardy could not have been within the intent of the legislature in adopting the Water Conservancy Act.

We must make disposition or distribution of funds which have been impounded, in the amount of approximately $350,000.00. Each taxpayer within the district stands upon the same footing as every other taxpayer. We construe the protests of those appearing in this cause and those appearing before the Special Master as representative of all taxpayers in the district. Claims, other than taxpayers' claims for refund, in the total sum of $229,230.15 have been filed with the Special Master. These claims have been audited by the certified public accountant appointed by the Special Master. Included in that total sum the accountant's report shows claims of $180,805.18 based on certificates of indebtedness issued by the district on vouchers authorized by its board of directors. Claims for services rendered at the request of the board of directors and approved by it for which no certificates were issued are $14,418.20. Claims for services rendered prior to formation of the district which have never been submitted to the board of directors are $11,740.00. A claim has been filed by attorneys appearing amicus curiae on which no action was sought or taken by the board of directors of the district. No request for attorney's fees was made when permission to appear amicus curiae was granted. We know of no authority for making an award of attorney fees to amicus curiae. The claim for such fees is therefore denied. Expenses of publication and accounting have been incurred by the Special Master.

Pursuant to our order the treasurers of the seven counties which lie in whole or in part within the district

have paid all moneys collected for district purposes into the registry of this court. The reports list the names of each taxpayer and the amount paid. We consider these lists to be claims on behalf of each taxpayer. No claims need be filed and no further evidence need be submitted by the taxpayers. The amount of all claims, including claims of taxpayers, exceeds the amount of money in the registry of the court by many thousands of dollars. No further evidence need be submitted by the holders of the certificates of indebtedness nor by the holders of claims approved by the district. The Special Master is directed to take testimony only on those claims on which the board of directors did not act, and to determine whether said claims should be allowed.

Since the total claims including those of the taxpayers exceed the funds available this court must determine whether one class of claims has priority over the other. We have had the benefit of briefs of both claimants and protestants. Consideration of the many cases cited fails to show any one entirely in point. In none of the cases cited has the taxpayer made a demand upon the proceeds of the tax levy certified by a *de facto* corporation. In no case has the tax money been ordered impounded by the court as was done here. The record in this court shows no objection by the holders of certificates issued prior to our order of impoundment. No action was brought by any taxpayer to enjoin the collection of the tax. Payment of the tax with few exceptions was voluntary. The impoundment order gives us full jurisdiction and authority over the funds.

This court, under its constitutional and equity powers, is vested with the obligation and authority to adminster and distribute the funds. It must do so without benefit of statutory or case authority. The holders of certificates of indebtedness and contracts with the district have worked for the establishment of a district which they believed to be in the public interest. The action of the *de facto* corporation in allowing the vouch-

ers and issuing the certificates is accepted as final by this court. Nevertheless, the district existed only as a *de facto* district, and its existence was ousted when the order of this court became final upon the denial of the petition for rehearing. We hold that the taxpayers as claimants shall share proportionately with the claimants in the funds in the registry of the court in that proportion in which the claim of each including the taxpayers bears to the total amount of the claims finally allowed. Each claimant including each taxpayer shall bear his proportion of the cost of these proceedings and each item shall bear its cost of refund.

Having determined that those who have claims for refund of taxes paid, and those who have other valid claims against the *de facto* corporation, shall receive equal treatment as creditors of the *de facto* district, we direct that no interest shall be allowed on any claim.

We are aware of the fact that thousands of taxpayers have been required to pay very small sums, and we know that the cost of processing refunds of such small amounts would in most instances exceed the amount of the refund involved. We invoke the doctrine of *de minimus non curat lex* and order that no claim for a sum less than $3.00 shall be considered of sufficient consequence to warrant inclusion in the list of claims approved to share in the pro rata distribution.

As hereinabove indicated, the Special Master is directed to take testimony on those claims which have not been allowed by the board of directors of the district, to determine the validity thereof and the amount of such claims as may be allowed. He will then make report to this court concerning the items of expense incurred by him as Special Master, the holders of claims which are approved by this opinion and such others as shall be determined to be valid, and the amount of each approved claim other than taxpayers. In setting forth the items of expense incurred by the Special Master there shall be included therein an item of $1,000.00 as compensation

to the Master for services rendered by him, all of which have been above and beyond any duties imposed upon him as a Judge of the District Court. Upon the filing of such report the Special Master shall be relieved of further responsibility in connection with this proceeding.

MR. JUSTICE SUTTON not participating.