## No. 20798.

### ALEXANDER GRIFFIN *v*. PEOPLE OF THE STATE OF COLORADO.
(400 P.2d 928)

Decided April 12, 1965.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Aurel M. Kelly, Special Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Chief Justice Pringle.

On February 2, 1962, plaintiff in error, hereinafter called defendant, was charged in four counts with the crimes of burglary, larceny, conspiracy to commit burglary, and conspiracy to commit larceny. The information charged that the burglarized premises were those of Thomas Gafney, doing business as Cathedral Motors, and that the property taken consisted of certain named items, including two tool boxes and "various miscellaneous tools," all the property of Thomas J. Gafney, doing business as Cathedral Motors.

The evidence presented by the people showed that on January 3, 1962, an automotive repair shop owned by Thomas J. Gafney, known as Cathedral Motors, was broken into and certain items, among them two tool boxes and a sander, were taken.

An uncle of the defendant's former wife was the foreman at Cathedral Motors, and defendant had frequently visited there. On the morning after the theft, the defendant came by the home of his former mother-in-law with another man whom he called "Slim." At that time, he told his former mother-in-law that "he or we" had "taken the stuff out of that garage . . . down where Billy [the foreman at Cathedral Motors] is."

Later that day, the defendant told his former sister-in-law he was going to come by and leave some things at her home in Derby. The articles stolen from Cathedral Motors were later found by the police in the back yard of this former sister-in-law. Defendant made a statement

to the police that on the night of the theft he had been thinking about "pulling a job" and that "Slim" was to go with him. He further told the police that he was drinking quite a bit, that he told "Slim" to go to Cathedral Motors, and the next thing he knew he woke up in a motel in Derby, Colorado, and the tools from the garage were in the car at that time.

At the trial, Gafney identified the sander as belonging to him. Two of the mechanics employed by Gafney identified the tool boxes and the tools contained therein as belonging to them and used by them at their work at Cathedral Motors. They stated that these tool boxes and tools were left on the premises of Cathedral Motors for safekeeping during the night.

The defendant was acquitted of burglary, but was convicted of conspiracy to commit burglary, larceny and conspiracy to commit larceny, and was sentenced to serve three to seven years on each count, the sentences to run concurrently. From this judgment, defendant brings writ of error here.

■ The defendant contends that the testimony of the mechanics that they were owners of the tool boxes and tools contained therein constituted a fatal variance between the proof and the information which attributed the ownership of these items of property to Gafney, doing business as Cathedral Motors. The complete answer to this contention is contained in the rule announced by this Court in *Romero v. People,* 134 Colo. 342, 304 P.2d 639, where it was said:

"It is well settled that the ownership [in larceny cases] may be laid either in the real owner or in the person in whose possession the property was at the time of the theft."

Here the mechanic employees of Gafney left their tools and tool boxes in the possession of Gafney for safekeeping during the night. There was no variance between the proof and the allegation of ownership. The defendant was not misled as to what tool boxes he was

charged with taking, nor could he again be tried for taking these tool boxes.

■ The defendant also contends that there was a fatal variance because the sander, which was admitted into evidence and identified as the property of Gafney, was not specifically described and itemized in the information. This contention has no merit. As previously pointed out, nine items alleged to be stolen were specifically described in the information and then followed the phrase "and various miscellaneous tools." The sander in question was used in automotive repair and we think it falls within the generic class of "various miscellaneous tools." The description contained in the information clearly advised the defendant of the nature of the property alleged to have been stolen by him and identified the transaction with clarity. No variance occurred between the proof and the allegations of the information by reason of the admission into evidence of the sander.

■■ It is also contended that no evidence of conspiracy was presented and therefore the charges of conspiracy should not have been submitted to the jury. The evidence which we have previously recited shows that defendant stated he acted in collaboration with one "Slim," and the next morning after the burglary he was seen in the company of "Slim" by his former mother-in-law to whom he stated that he or they had taken the tools out of the garage where his uncle worked [Cathedral Motors]. It is not necessary that there be direct testimony that the parties charged with conspiracy entered into a specific agreement to commit the crime. It is sufficient if there is evidence in the record from which the jury can infer such an agreement or meeting of the minds. See La Vielle v. People, 113 Colo. 277, 157 P.2d 621; Abeyta v. People, 156 Colo. 440, 400 P.2d 431. It may be that the evidence to support the crime of conspiracy here is not overwhelming, but the evidence of cooperation between the defendant and the so-called

"Slim" is present in the record, and its weight is for the jury and *not* us.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.