## No. 26415

### The People of the State of Colorado v. Marci McCain

(552 P.2d 20)

Decided July 6, 1976.                    Rehearing denied August 3, 1976.

John P. Moore, Attorney General, John E. Bush, Deputy, Donna A. Maranchik, Assistant, David A. Rees, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Mary G. Allen, Deputy, for defendant-appellant.

*In Department.*

Opinion by MR. JUSTICE LEE.

Defendant Marci McCain appeals her conviction of felony theft. 1971 Perm. Supp., C.R.S. 1963, 40-4-401.[1] We reverse and remand with directions to dismiss the information.

The charge upon which conviction was based accused defendant of theft from the St. Andrews Memorial Church. The alleged theft occurred while she was acting as promoter of an arts festival sponsored by the church. Defendant was also charged with forgery, though this count was dismissed upon her motion for judgment of acquittal.

I.

The events giving rise to the charges against defendant, as shown by the People's evidence, commenced in January 1973 when defendant and her four-year-old son arrived in Denver from Texas. Abandoned by her

---

[1]Now section 18-4-401, C.R.S. 1973.

husband and destitute, she appealed for help to St. Andrews church officials and was provided with free room and board in return for performing household work in the church. In order to show her gratitude, defendant, who had studied commercial art and set design, proposed what came to be called the "Starving Arts Festival." The plan was to raise money for the church by selling the works of local artists to the public. A street near the church was to be closed off, and concessions would provide refreshments for potential purchasers as they examined the art. Defendant had successfully promoted a similar festival in Texas.

The church responded favorably to the idea. After negotiations, a written contract was prepared by an attorney designated by the church. The contract delegated to the defendant the responsibilities connected with the promotion of the enterprise. Among her duties were contracting with concessionaires, selling tickets, advertising, and securing the participation of artists. She was in charge of handling all receipts and expenditures. As compensation, defendant was to receive, after expenses, twenty-five percent of total gross receipts of all concessions, while the church was entitled to seventy-five percent. Additionally, the church was to receive forty percent of the receipts of the beer concession, while the beer concessionaries would receive sixty percent.

A checking account in the name of the festival was opened. All checks drawn on the account were to be signed by defendant and cosigned either by the rector of the church or its warden.

Defendant and an assistant proceeded to carry these plans into execution. The church provided little or no assistance to the project. As the date of the festival approached, defendant, who had a history of psychological instability, became increasingly discouraged about its prospects. She was disillusioned with the church itself because she thought immoral and illegal activities were going on in the church and were being sanctioned by the rector. She also had been told that festival moneys were allegedly being diverted for church purposes.

Defendant decided to cancel the festival because of the many difficulties she had encountered. On September 11, 1973, she made an unannounced and sudden departure. She flew to New Orleans, taking with her approximately $1,100 from the festival account, consisting of two checks drawn on that account and payable to her, and the cash proceeds of a check given her by another church as a deposit for a soft-drink concession at the festival.

At trial, defendant testified that it was her intent to hold the money, pending the commencement of civil proceedings which she contemplated against the church. She contacted a Denver attorney by telephone from New Orleans to notify him of her intentions. He advised her to return to Denver, and informed her that criminal charges had been filed against her. Defendant voluntarily returned to Denver, where she was taken into

custody. She testified that she had given the festival money to her husband to be placed in a bank safe deposit box, but that he had subsequently disappeared.

The church attorney who prepared the contract between the parties characterized the Starving Arts Festival as a joint venture between defendant and the church.

After trial to a jury, defendant was convicted of theft. She was sentenced to a five-year suspended term and placed on probation.

## II.

We agree with defendant's argument that the evidence was insufficient to support a conviction of theft and that her motion for judgment of acquittal should have been granted.

The statute (1971 Perm. Supp., C.R.S. 1963, 40-4-401) provides that one commits theft "* * * when he knowingly obtains or exercises control over *any thing of value of another without authorization* * * * and * * * [i]ntends to deprive such other person permanently of the use or benefit of the thing of value * * *." The elements of the offense of theft critical to the determination of the issue here are those italicized portions of the statute.

The question, then, is whether, under the evidence presented by the People, defendant can be said to have knowingly obtained or exercised control of funds of St. Andrews Memorial Church without authorization, and with intent to permanently deprive the church of the use or benefit of the funds in question.

We note, first of all, that the arrangement between the defendant and the church arose out of a written contract by which the parties became associated in a single business venture for profit. As the scrivener attorney characterized the relationship, it was in the nature of a joint venture, by which each party in cooperation with the other hoped to profit from the promotion and sponsoring of the arts festival. *See Breckenridge Co. v. Swales*, 185 Colo. 160, 522 P.2d 737; *Realty Co. v. Feit*, 154 Colo. 44, 387 P.2d 898; *Boner v. Fulenwider, Inc.*, 32 Colo. App. 440, 513 P.2d 730.

The church's contribution to the venture consisted of the use of its name and a portion of its premises upon which the festival would be conducted. It contributed no capital or funds whatsoever to the financing of the venture.

Defendant's contribution consisted of the numerous responsibilities of promoting and organizing the festival, and raising funds with which to pay for the attendant expenses. The hope was that there would be gross receipts in excess of expenses, which would be shared on a percentage basis in accordance with the terms of the contract.

The contract authorized defendant to receive and disburse moneys raised and to generally manage the festival. The People's evidence

confirmed this arrangement. Under these circumstances, neither of the parties can legally be said to be the owner of the funds raised, to the preclusion of the other party. This is particularly so when the festival was yet to be held, and an accounting rendered. At most, the church's property interest was expectant, dependent upon whether the festival turned out to be a profitable operation. *Cf. People v. Westfall*, 185 Colo. 110, 522 P.2d 100. It is also clear that under the statute the ownership of the property which is the subject of the theft must be laid either in the real owner or in the person in possession thereof at the time of the alleged theft. *People v. Diaz*, 182 Colo. 369, 513 P.2d 444; *Raullerson v. People*, 159 Colo. 395, 412 P.2d 236; *Griffin v. People*, 157 Colo. 72, 400 P.2d 928; *Romero v. People*, 134 Colo. 342, 304 P.2d 639. It follows that here, where the defendant had an interest in the festival funds similar to that of the church, and was the party designated to receive the funds, she could not be guilty of theft under the statute.

We note by way of analogy the general principle that in the absence of statute a co-owner of property cannot ordinarily be guilty of theft and, further, that joint owners, or tenants in common, cannot steal from each other, and members of a voluntary association having an interest in its funds cannot commit larceny of such funds. Annot., 17 A.L.R. 3d 1394; 169 A.L.R. 372; 50 Am. Jur. 2d *Larceny* § § 83 and 84.

We do not wish to be understood to say that defendant is absolved of possible civil liability for her conduct in handling the funds of this venture.

The judgment is reversed and the cause remanded with directions to dismiss the information.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE KELLEY and MR. JUSTICE ERICKSON concur.