## No. 27599

## The People of the State of Colorado v. Henry George Zimbelman

(572 P.2d 830)

Decided December 19, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Paul Q. Beacom, District Attorney, 17th Judicial District, Gregory Fasing, Deputy, Marc Mishkin, Deputy, for plaintiff-appellant.

John F. Cook, for defendant-appellee.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The appellee was charged with twenty counts of felony theft from Balto Industries, Inc. After a pre-trial hearing, the district court dismissed

the charges, holding that the People had failed to establish the corporate status of Balto Industries. We reverse.

Most of the relevant facts are undisputed. Balto Industries was incorporated in Colorado in 1969. The appellee and Floyd Knox formed the corporation, and owned half of the corporate stock. Although the corporation was declared defunct by the secretary of state in 1972 for failure to pay annual taxes and file annual reports,[1] the two owners continued to operate the business under its corporate name.

Late in 1975, Knox became ill and offered to sell his shares to the appellee. During negotiations, the appellee prepared a balance sheet to show the company's value. Knox's belief that the balance sheet failed to reveal the actual value of the business prompted him and his wife to examine the company's books. They discovered evidence indicating that the appellee had diverted to his personal account checks made out to Balto Industries.

Knox died in January, 1976. His widow sued to enjoin payment of certain life insurance proceeds to Balto Industries and to determine the respective rights of the appellee and the Knox estate under a stock purchase agreement entered into at the time of incorporation. Pursuant to a stipulation by the parties, the court ordered an audit by a court-appointed certified public accountant, Irving Hook. Hook was selected by Mrs. Knox who suggested him to the appellee and the court. However, Hook was to be paid by Balto Industries. The appellee voluntarily gave Hook ledgers, checks and other records to assist in the audit.

Hook and Mrs. Knox subsequently gave police authorities information upon which the felony charges in this case were based. This information included papers the appellee gave Hook for the audit. The appellee moved to dismiss the criminal charges for lack of a corporate victim. He also moved to suppress the evidence obtained from Hook on the ground that the information was protected by the accountant-client privilege.[2] The trial court granted both motions.

### I. *Corporate Existence*

A co-owner of property cannot ordinarily be guilty of theft of that property. *People v. McCain*, 191 Colo. 229, 552 P.2d 20 (1976). Here, therefore, the People were required to establish the existence of a corporate entity. Otherwise the appellee simply would have been a co-owner of his company's funds, and the funds would not have been susceptible to theft by him. The trial court ruled that, because the corporation had been legally defunct since 1972, the appellee and Knox were doing business as co-owners, and there was no basis for criminal theft charges. We disagree.

---

[1]This action was taken pursuant to C.R.S. 1963, 31-10-9 (now section 7-10-109, C.R.S. 1973).
[2]Section 13-90-107(1)(f), C.R.S. 1973.

■ The People correctly assert that in criminal cases the prosecution is required to prove only the *de facto* corporate existence of an alleged corporate victim. *Hunter v. People*, 172 Colo. 480, 474 P.2d 207 (1970); *People v. Lamb*, 165 Colo. 332, 438 P.2d 699 (1968); *Goodfellow v. People*, 75 Colo. 243, 224 P. 1051 (1924).

■ For an enterprise to constitute a *de facto* corporation, three elements must coincide: (1) a law under which a corporation may lawfully be formed; (2) a *bona fide* attempt to form the corporation according to that law; and (3) an exercise of, or attempt to exercise, corporate powers. *People v. South Platte Water Conservancy District*, 146 Colo. 318, 364 P.2d 215 (1961); *Bonfils v. Hayes*, 70 Colo. 336, 201 P. 677 (1921); *Fisher v. Pioneer Construction Co.*, 62 Colo. 538, 163 P. 851 (1917); *Jones v. Aspen Hardware Co.*, 21 Colo. 263, 40 P. 457 (1895). The record clearly indicates that these three requirements were met in this case.

■ It is clear beyond dispute that Balto Industries, Inc. was validly incorporated under Colorado law. Several witnesses testified that business operations continued under the corporate name even after the corporation was declared defunct in 1972. All business records and books, bank accounts, and the sign on the company headquarters bore the name "Balto Industries, Inc.," clearly evincing an intent to carry on the business as a corporation. Ordinarily, evidence of this nature is sufficient to establish *de facto* corporate status in a criminal case. *See, e.g., Hunter v. People, supra*; *People v. Lamb, supra.*

■ The trial court distinguished this case, however, on the basis of the fact that at the time of the alleged thefts the company had been declared defunct. Thus the ultimate question is whether that defunct status prevented Balto Industries from operating even as a *de facto* corporation. We conclude that it did not.

■ Generally a corporation which has been dissolved by judicial decree or statutory forfeiture cannot exist thereafter as a *de facto* corporation. *Bonfils v. Hays, supra. See also* 8 *Fletcher Cyclopedia of Corporations* §3844 (Rev. Ed. 1966), and cases cited therein. The statute under which Balto Industries was declared defunct, section 7-10-109, C.R.S. 1973, penalizes a corporation for failing to pay franchise taxes or file annual reports by prohibiting its transacting business *as a corporation* while it is defunct. However, the statute also provides that upon filing the necessary reports and paying the delinquent taxes, plus a penalty, the corporation is "revived" and reinstated to full corporate status. Section 7-10-109(4), C.R.S. 1973.

■ Thus, the statute does not authorize involuntary dissolution of the corporation, but merely allows the secretary of state to suspend its operations while it is in default. *Dominion Oil Co. v. Lamb*, 119 Colo. 62, 201 P.2d 372 (1948); *Bokel v. Zitnik*, 93 Colo. 565, 27 P.2d 753 (1933); *Ruth v. Devaney*, 84 Colo. 476, 271 P. 623 (1928); *Smith v. Highland*

*Mary Mining, Milling & Power Co.*, 82 Colo. 288, 259 P. 1025 (1927). The corporation's shareholders retain the power to hold annual meetings and elect corporate officers and directors, and the corporation may still hold, mortgage, and convey real estate. Section 7-10-109(2) and (3), C.R.S. 1973. A "revived" corporation is regarded as having had continuous existence throughout the period of suspension. *Dominion Oil Co. v. Lamb, supra; Smith v. Highland Mary Mining, Milling & Power Co., supra.*

■ In other words, despite its technically defunct status, Balto Industries, Inc. still retained very real powers and duties *as a corporation*, including the power to hold property in the corporate name.[3] Although its power to transact business had been suspended, the corporation had not totally ceased to exist as a legal entity.

■ Since Balto Industries' defunct status did not preclude its continued existence as at least a *de facto* corporation, we hold that the People's evidence sufficiently established the existence of a corporate victim of the alleged thefts.

## II. *Accountant-Client Privilege*

■ The trial court also granted the appellee's motion to suppress all evidence obtained from Hook, the accountant who audited Balto Industries' records. The court ruled that the information given by the appellee to Hook was privileged. Again, we disagree.

The accountant-client privilege is established by statute in Colorado in the following language:

"A certified public accountant shall not be examined without the consent of his client as to any communication made by the client to him in person or through the media of books of account and financial records, or his advice, reports, or working papers given or made thereon in the course of professional employment; nor shall a secretary, stenographer, clerk or assistant of a certified public accountant be examined without the consent of the client concerned concerning any fact, the knowledge of which he has acquired in such capacity." (Section 13-90-107(1)(f), C.R.S. 1973.)

The question is whether the appellee occupied the status of Hook's "client" so as to enable him to invoke the privilege. We hold that he did not.

Hook was employed in the *civil* proceedings, pursuant to a stipulation by the parties, to audit Balto Industries' corporate books. The purpose of the audit was to provide an independent determination of the corporations' value, and thus facilitate settlement of the lawsuit. Hook was appointed, not by the appellee, but by order of the district court, and he was to be

---

[3]It is important to note that the corporation's assets had not been distributed to the individual shareholders, as they would have been in an involuntary dissolution proceeding. *See* section 7-8-118, C.R.S. 1973. If a dissolution had been effected the result might be different in this case, but we need not address that question. *See* 8 *Fletcher Cyclopedia of Corporations* §3844, *supra.*

paid by Balto Industries. Thus, Hook's activities were neither ordered, controlled, nor paid for by the appellee. These facts clearly show that the appellee was not Hook's client for these purposes, and therefore the appellee could not invoke the accountant-client privilege in this case. *See Hopkins v. People*, 89 Colo. 296, 1 P.2d 937 (1931).

Accordingly, the orders of the trial court must be reversed, and the cause remanded to the district court with directions to vacate the order dismissing the information and to reinstate the information.