**BOWERS BUILDING COMPANY, a sole proprietorship, Plaintiff-Appellee and Cross-Appellant,**

v.

**ALTURA GLASS CO., INC., Defendant-Appellant and Cross-Appellee,**

and

**Jack B. Crownover, Defendant-Cross-Appellee.**

**No. 83CA0107.**

Colorado Court of Appeals, Div. III.

Dec. 13, 1984.

Jim Travis Tice, Littleton, for plaintiff-appellee and cross-appellant.

Donald A. Brenner, Denver, for defendant-appellant and defendant-cross-appellee.

TURSI, Judge.

The trial court entered judgment finding that Altura Glass Co., Inc., and its assign-

or, Division 8, Inc., but not John B. Crownover, were liable to the Bowers Building Co. for breach of a subcontracting agreement. Bowers cross-appeals from that part of the judgment which excluded Crownover, the president of Altura, from personal liability for the breach. Altura appeals the judgment entered against it. We reverse, and remand for further proceedings.

## I

The trial court's judgment against Altura was based on a finding that it was operating as a de facto corporation. Bowers contends that, in light of § 7–2–104, C.R.S., the de facto corporation doctrine is no longer applicable in Colorado and that Crownover should be held personally liable. We reject the contention that the doctrine is no longer applicable in Colorado. However, we hold that it is not applicable under the facts of this case.

On April 9, 1980, Bowers and Division 8 entered a subcontracting agreement which provided that Division 8 was to furnish the labor and materials necessary to fabricate and install aluminum windows and entries on a construction project for which Bowers was the general contractor. Division 8 was unable to complete the contract and on January 9, 1981, attempted to assign it to Altura. Division 8 notified Bowers by letter that it had ceased to operate as a glassing contractor and that it had sold all contracts to Altura. Crownover attached a handwritten note to the letter requesting that all future checks from Bowers be made payable to "Altura Glass Co." Crownover signed the note "Pres. Jack Crownover." The assignment to Altura was accepted by Bowers.

On January 13, 1981, Bowers issued a check payable to "Altura Glass Company, Inc." which Altura accepted. Altura was later unable to complete the work, forcing Bowers to hire another subcontractor.

Bowers contends that Crownover should be liable on the contract because on January 9, 1981, when Crownover accepted assignment of the subcontracting agreement, Altura did not have a certificate of incorporation. Although the necessary documents had been mailed to the secretary of state on January 9, 1981, the certificate was not issued until January 12, 1981. The trial court was persuaded, however, that because Crownover acted as an officer of "Altura Glass Co., Inc." throughout the assignment transaction, and because the articles of incorporation had already been executed and delivered to Altura's attorney for filing, Altura had obtained de facto corporation status on January 9, and therefore, Crownover was not personally liable on the contract.

In *Bonfils v. Hayes,* 70 Colo. 336, 201 P. 677 (1921), Colorado recognized that de facto corporate status exists when there is (1) a law under which a corporation can be formed, (2) a bona fide attempt to form a corporation under that law, and (3) an exercise of corporate powers. Then, even though there are defects in compliance with the governing statute, the corporate status cannot be attacked collaterally. *Bonfils v. Hayes, supra.*

In 1958 the General Assembly adopted a new corporation code based on the Model Business Corporation Act. *See* Clark, *The New Colorado Corporation Act,* 35 Dicta 317 (1958). Under that act a corporation comes into existence upon the issuance of the certificate of incorporation. *Masinton v. Dean,* 659 P.2d 50 (Colo.App. 1982). At the time of the Bowers assignment, § 7–2–104, C.R.S., provided that:

> "Upon the issuance of the certificate of incorporation, the corporate existence shall begin, and each certificate of incorporation shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under this code."

Although this section was amended in 1981, the pertinent language here was unchanged. *Cf.* § 7–2–104, C.R.S. (1984 Cum. Supp.). Whether § 7–2–104 abrogates the de facto corporation doctrine prior to the

issuance of the certificate of incorporation has not been addressed. However, the comment to the Model Business Corporation Act Annotated § 56 (1971) states:

"Under the unequivocal provisions of the Model Act, any steps short of securing a certificate of incorporation would not constitute apparent compliance. Therefore a de facto corporation cannot exist under the Model Act."

Also, 8 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 3762.1 (1982) states that under the Model Act "a corporation comes into existence only when the certificate of incorporation has been issued and, until issuance of the certificate, there is no corporation de jure, de facto or by estoppel." *See also* R. Zinn & J. Stockmar, *Closely Held Corporations in Colorado* § 3.28 (1981).

Further, courts that have directly addressed the issue have concluded that there can be no de facto corporate existence prior to the issuance of the certificate of incorporation under statutes similar to ours. *See Cahoon v. Ward,* 231 Ga. 872, 204 S.E.2d 622 (1974); *Timberline Equipment Co., Inc. v. Davenport,* 267 Or. 64, 514 P.2d 1109 (1973); *Robertson v. Levy,* 197 A.2d 443 (D.C.1964).

We are aware that after the enactment of § 7–2–104, in *People v. Zimbelman,* 194 Colo. 384, 572 P.2d 830 (1977), the supreme court reiterated the three elements required for a de facto corporation and cited as authority several cases decided before the Model Act was enacted in Colorado. The court's mention of the de facto doctrine in *Zimbelman,* however, is not dispositive as to the question presented in this appeal.

■ In *Zimbelman,* the court held that a corporation declared defunct under § 7–10–109, C.R.S., because of failure to pay franchise taxes retained de facto status during its delinquent period until it was revived and reinstated to full corporate status after paying back taxes pursuant to § 7–10–109(4). The *Zimbelman* court stated that "a 'revived' corporation is regarded as having had continuous existence throughout the period of suspension." Thus, *Zimbelman* makes the de facto doctrine pertinent only in the limited situation in which an otherwise de jure corporation is suspended for its failure to pay taxes and fees and is thereafter revived. *Zimbelman* does not control the question whether a corporation has any sort of de facto existence prior to the issuance of a certificate of incorporation. Therefore, we conclude that prior to the issuance of a certificate of incorporation there is no de facto corporate status regardless of a substantial or colorable attempt to comply with the law effecting the creation of a corporation.

## II

■ In its cross-appeal, Altura contends that because Crownover was owed money by Division 8, Crownover accepted only an assignment of money due Division 8 under the terms of the contract, but did not agree that Altura would perform subcontracting duties. However, since there is sufficient evidence in the record to support the trial court's findings that the entire subcontracting agreement was assigned to Altura, we reject this contention.

## III

■ Altura also contends that Bowers lacks capacity to sue because Bowers was named in the pleadings as a sole proprietorship rather than a person doing business as Bowers Building Company. This issue, however, was not preserved for appeal because Altura did not raise the issue of Bowers' capacity to sue in the trial court. C.R.C.P. 9(a)(1). *Adler v. Adler,* 167 Colo. 145, 445 P.2d 906 (1968).

Therefore, in light of our holding that there is no de facto corporation status prior to the issuance of the certificate of incorporation, the judgments against Altura and in favor of Crownover are reversed, and the cause is remanded to the trial court to determine the respective liabilities of Altura and Crownover.

KELLY and METZGER, JJ., concur.